JDP PC | Jeff Dominic Price  |  SBN 165534
730 Arizona Avenue, Suite 200
Santa Monica, California 90401
jdp@jdpfirm.com
Tel. 310.451.2222

Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COUR**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| M.G.E., JR., by and through his Guardian ad Litem, VALERIE ESPARZA,<br><br>        Plaintiff,<br><br>        vs.<br><br>LOS ANGELES DODGERS, LLC, CITY OF LOS ANGELES, MICHEL MOORE, LAD SECURITY OFFICER JOHN DOE #1, LAD SECURITY OFFICER JOHN DOE #2, LAD SECURITY OFFICER JANE DOE #1, LAPD OFFICER RICHARD ROE 1, LAPD OFFICER RICHARD ROE 2, LAPD OFFICER JANE ROE 1, and DOES 1-20, inclusive,<br><br>        Defendants. | **No.**<br><br>COMPLAINT FOR DAMAGES<br><br>1.    Deprivation of Constitutional Rights, 42 U.S.C. § 1983, including *Monell*<br>2.    Assault<br>3.    Battery<br>4.    False Imprisonment<br>5.    Negligence<br>6.    Premises Liability<br>7.    Deprivation of Civil Rights, Bane Act, Cal. Civil Code § 52.1 and Conspiracy<br>8.    Negligent Hiring, Retention and Supervision |

## Jurisdiction and Venue

1.      This is a civil rights action arising from arising from an encounter between Plaintiff, M.G.E., Jr., and the defendants, on April 16, 2022, at Dodger Stadium, during which defendants conspired and, by the use of threats, intimidation, coercion, force and violence, intentionally deprived Plaintiff of his constitutional and statutory rights, resulting in the infliction of severe and permanent injuries to Plaintiff. This action is brought pursuant to 42 U.S.C. § § 1983 and 1988; the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343 (a) (3) and (4), and the above-mentioned statutory and constitutional provisions. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367, to hear and decide claims arising under state law.

2.     Venue is proper in the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1391(b), in that a defendant resides in this district and as the defendants' actions occurred within this district.

### Parties

3.     Plaintiff M.G.E., Jr. ("MGE"), is minor child and a citizen of the United States of America residing in California and sues by and through his guardian ad litem and next friend, Valerie Esparza.

4.     Defendant Los Angeles Dodgers, LLC ("LAD") is a limited liability company duly organized and existing under the laws of Delaware, with its principal place of business in Los Angeles County, California; at all material times LAD had a system of cooperation and interdependence with the LAPD and the City and its security personnel were LAPD officers who acted closely, jointly and in concert with uniformed LAPD officers who were present in the immediate confines of the Stadium and they exercised authority, normally reserved to the state, to effect arrests and to initiate the process for the issuance of citations to persons.

5.     The LAPD Defendants, Defendants LAPD Officer Richard Roe 1, LAPD Officer Richard Roe 2 and LAPD Officer Jane Roe 1, were police officers in LAPD uniform employed by the City of Los Angeles and acting within the scope of their employment with the Los Angeles Police Department ("LAPD").

6.     The LAD Security Defendants, Defendants John Doe #1, John Doe #2 and Jane Doe #1, were plainclothes LAD Security personnel who were acting jointly and in concert with and as part of a conspiracy with the LAPD Defendants and the City and LAD and were thus state actors; on the basis of information elicited from

litigation in other cases, plaintiff believes and therefore alleges that the LAD Security Defendants were LAPD police officers not wearing uniforms.

7.     Defendant Michel Moore is the Chief of Police of the LAPD and was at all material and relevant times employed by City as the Chief of Police and was acting within the course and scope of that employment; as Chief, Defendant Moore was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of the Los Angeles County Police Department employees and/or agents. Defendant Moore is and was charged by law with the administration of the Los Angeles Police Department, with the assistance of other executive officers. Defendant Moore also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the LAPD alleged herein were committed. Defendant Moore is being sued in his official capacity and in his individual capacity as a supervisory official for his own culpable action or inaction in the training, supervision, or control of his subordinates, or for his acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that showed a reckless or callous indifference to the rights of citizens -- Defendant Moore's affirmative conduct involves, *inter alia*, his failure to ensure enforcement of policies, rules or directive that set in motion a series of acts by others which he knew or reasonably should have known, would cause others to inflict the constitutional injury; Defendant Moore was aware of the conduct of the individual defendants described in this case and specifically approved of and ratified that conduct.

8.     Defendant City of Los Angeles ("City") was at all material times alleged herein an unincorporated association, municipal corporation, and a California governmental entity duly organized and existing under the laws of the State of California, charged with and responsible for appointing and promoting, the employees of the entity, and for the supervision, training, instruction, discipline,

control and conduct of said employees, including the defendants, through its agents, including Michel Moore (born Michel Sanchotena), the Chief of Police of the LAPD; at all times alleged herein such persons and defendants had the power, right and duty to control the manner in which the individual defendants carried out the objectives of their employment and to assure that all orders, rules, instructions, and regulations promulgated were consistent with the United States Constitution, the California Constitution, the laws of the United States, the laws of the State of California, and the laws of the municipality.

9.     The unknown named defendants ("Doe" defendants) include, but are not limited to, unknown named employees and agents who acquiesced in the actions and conduct that caused the injuries to the Plaintiff set forth herein, and unknown named employees of the Los Angeles Dodgers and the City of Los Angeles.

10.     Plaintiff is ignorant of the true names and capacities of those defendants named as Unknown Named Defendants or "Does" or "Roes", though all are alleged to have been acting in concert with defendants, but alleges that each such defendant was in some intentional or grossly negligent manner responsible for his injuries.

11.     Plaintiff complied with the tort claim notice provisions of California Government Code § 910 *et seq*. by presenting a timely tort claim notice to the City of Los Angeles.

12.     Defendants, and each of them, did the acts and omissions alleged herein in bad faith and with knowledge that their conduct violated well and clearly established and settled law.

13.     At all times material herein, defendants, and each of them, were acting as the employees, agents, representatives, and officers of every other defendant herein, and within the course and scope of such employment and agency.

**Statement of Facts**

**The Los Angeles Dodgers employed a "security" force staffed with LAPD officers**

14.     After several incidents of violence and after LAD was found negligent in 2014 in the 2011 Opening Day beating of a San Francisco Giants fan at Dodger Stadium ("the Stadium"), LAD created a police force, referred to as Security; Dodgers Security employees paid directly by the LAD included (A) non-sworn persons, (B) uniformed sworn LAPD officers, and (C) sworn law enforcement officers, most, if not all, employed by LAPD, dressed in polo shirts and slacks without law enforcement badges; Plaintiff was assaulted and battered by all three categories of LAD Security.

15.     Defendant LAPD officers observed Plaintiff being unlawfully assaulted and battered without cause and with excessive force, but despite having the reasonable opportunity to prevent the unlawful seizure of and use of excessive force against plaintiff they did nothing to intervene to prevent the violation of plaintiff's constitutional rights or to assist Plaintiff when the harm to Plaintiff was imminent and foreseeable; these uniformed Los Angeles Police Department officers acted with deliberate indifference towards plaintiff and jointly and in concert with LAD Security.

16.     Defendant LAD, in concert with the LAPD, conspired with LAPD and engaged in a course of conduct to instruct Security employees to falsely conduct unjustified and racially motivated arrests with deliberate indifference to the violation of the constitutional rights of patrons, including Plaintiff.

17.     Plaintiff is informed and believes and thereon allege that Defendants acted in a manner that is inconsistent with the purpose and standards of security employees, and they acted in violation of the "Los Angeles Dodgers Security & Guest Services" manual. The actions of Dodgers Security employees as alleged

herein were encouraged, known and ratified by Defendants City of Los Angeles and LAD.

18.     The plaintiff previously was deprived of interests protected by the Constitution of the United States of America and the Constitution of the State of California and by the laws of the United States of America and the State of California, and each and every defendant caused, by commission or omission, such deprivation, and while acting under color of law.

19.     All acts and or omissions perpetrated by each defendant, except any governmental entity defendant or any defendant only in his/her official capacity, were engaged in maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to the rights allegedly violated, despicably, and with evil motive and intent, in disregard for the rights of the plaintiff and others.

**Cincinnati Reds v. Los Angeles Dodgers, April 16, 2022**

20.     On April 16, 2022, in the City and County of Los Angeles, Plaintiff was lawfully attending a Los Angeles Dodgers game against the Cincinnati Reds at Dodger Stadium.

21.     In the 8th Inning, while the Dodgers were beating the Reds by a score of 5-0, plaintiff left his seat to escort his wife to the restroom and walked to a part of the stadium adjacent to the concession stands.

22.     On or about April 16, 2022, in the County of Los Angeles, Plaintiff was lawfully attending a Los Angeles Dodgers game against the Cincinnati Reds at Dodger Stadium with his parents, siblings, family members and friends.

23.     Around the time of the seventh inning Plaintiff walked to the snack bar.

24.     As Plaintiff was approaching the snack bar he heard a loud commotion to the left; when he looked that way he noticed that it was his father being harassed by LAD security.

25.     A private security officer was yelling at Plaintiff's father; as the private

security guard, who was a middle aged Hispanic male, did this LAPD officers (Officers John Doe 1, John Doe 2, and Jane Doe 1, and, possibly others) were standing within earshot watching the security guard interact Plaintiff's father, Manuel G. Esparza.

26.   Plaintiff walked towards them, and, noticing that the security guard was being very aggressive, protested and stated that they should let his father go.

27.   Plaintiff also asked the security guard they were being so aggressive with his father, Manuel Esparza.

28.   At that time the security guards turned around and started to be aggressive with Plaintiff; they then grabbed Plaintiff and picked him up and embraced him in a bear hug and started jerking him around to the point where he heard his lower back crack.

29.   Plaintiff's mother was coming out of the restroom and she yelled at the security guard and the LAPD officers, telling them to leave Plaintiff alone and that he was a minor.

30.   At first they weren't listening to Plaintiff's mother, Valerie; she told one of the female security officers that Plaintiff was a minor and that he was only 16 years old. The female security officer then told the other security officers to let Plaintiff go.

31.   Plaintiff's mother had to repeatedly tell the defendants several times that Plaintiff was only 16 years of age before they decided to let Plaintiff go; then they escorted Plaintiff out of the stadium and ejected him from the baseball game.

32.   Plaintiff had scoliosis and had scoliosis before April 16, 2022.

33.   The next day Plaintiff started experiencing severe back pain and went to the hospital; Plaintiff was administered an MRI of the back and started doctor visits with an orthopedic back specialist.

34.   Plaintiff does not believe that physical therapy has helped and is still suffering from severe back pain, which was caused by the defendants.

35.     An LAD Security officer, Defendant John Doe #1, who, on information received through other litigation, was an active police officer employed by the City and the LAPD, had rapidly accosted MGE's father and yelled at him to give him the items he was holding in his right and left hands; as the private Security officer, who was a middle aged Hispanic male, did this LAPD officers (Defendant Officers Richard Roe 1, Richard Roe 2, and Richard Roe 3) were standing within earshot approximately 5 feet away watching the Security officer interact with Plaintiff.

36.     MGE's father asked the Security officer, John Doe #1, why he asked for the items he was holding and was in the process of handing the item in his right hand to the defendant Security officer, but the Security officer violently and recklessly assaulted and battered MGE's father and grabbed at his hand and in one motion snatched the e-cigarette from his hand and then immediately grabbed and twisted Manuel Esparza's left hand (which was holding a case) and wrist and twisted his arm behind his back and forcibly jammed Plaintiff's wrist and arm up behind Plaintiff's back.

37.     When addressing Plaintiff's father the defendant was using profanity.

38.     This action severely injured Manuel Esparza's left wrist, hand and arm and caused him to suffer other injuries; the three LAPD defendants identified above were present, were close enough to intervene, had the authority to intervene, had the opportunity to intervene and should have intervened as a crime was being committed by the Security officer in their presence, but they all three failed to intervene to stop the use of excessive force against Plaintiff, the deprivation of his civil rights, the assault, battery and false imprisonment by the defendant Security officer, and they aided and abetted the Security officer in his tortious conduct.

39.     Simultaneously, another defendant Security officer, John Doe #2, grabbed plaintiff's father's right arm and began to twist it up behind his back; Defendant Jane Doe #1 was present and giving cover to John Doe #1 and John Doe

#2 and aided and abetting them by failing to intervene to stop the use of excessive force and the false arrest of Manuel Esparza.

40.     The defendants then handcuffed Manuel Esparza.

41.     As the defendant Security officer was assaulting and battering plaintiff's father, the Security officer was saying "quit resisting" and was telling him that he was leaving the park despite the fact that he never resisted and that the defendant Security officer was the aggressor and had assaulted, battered and injured him.

42.     Defendants LAD Security Defendants and LAPD Defendants, Richard Roe 1, Richard Roe 2, and Jane Roe 1, who met and arrived at a meeting of the minds, and formed a mutual understanding, agreed, for the purpose of forming a conspiracy to impose the use of excessive force against LAD patrons, including Plaintiff, and to falsely arrest patrons, including Plaintiff, that the LAPD Defendants would stand by and maintain a false image of legitimacy and fail to intervene to protect Plaintiff from being victimized by the use of excessive force against him by the LAD Security officers, John Doe #1, John Doe #2 and Jane Doe #1 and fail to intervene in the false arrest of Plaintiff by those defendants, and they were all participants in the use of excessive force against Plaintiff and the arrest of plaintiff without probable cause, by agreeing to and arriving at a meeting of the minds and a mutual understanding to act as described.

43.     The LAPD Defendants, who were present, by their conduct, implicitly authorized the conduct of the LAD Security defendants in using excessive force against Plaintiff and in handcuffing and falsely arresting Plaintiff — they were visibly present with a few feet away when Plaintiff was being assaulted and arrested and they were in uniform and presenting a false image of legitimacy to the ordeal and preventing Plaintiff's family members from giving aid to Plaintiff.

44.     The LAPD Defendants, Richard Roe 1, Richard Roe 2, and Jane Roe 1,

who were present, by their conduct, facilitated and implicitly encouraged the conduct of the LAD Security defendants in using excessive force against Plaintiff and in handcuffing and falsely arresting Plaintiff — they were visibly present with a few feet away when Plaintiff was being assaulted and arrested and they were in uniform and presenting a false image of legitimacy to the ordeal and giving "cover" to the LAD Security defendants as they violated Plaintiff's constitutional rights by using excessive force against him, handcuffing him too tightly and arresting him without probable cause.

45.     The supervisory defendants, whose identities are unknown, negligently and recklessly supervised the defendant officers, negligently and recklessly hired and retained these employees employed by the LAD and the City of Los Angeles, negligently and recklessly supervised the LAD and City of Los Angeles employees, negligently and recklessly hired and retained persons, and negligently, recklessly and intentionally covered up, concealed and suppressed information revealing the unconstitutional policies, practices and customs maintained by the City of Los Angeles.

46.     As a proximate result of the aforementioned acts and or omissions of defendants, and each of them, Plaintiff suffered from personal injuries, including but not limited to a severe injury to his left wrist, hand and arm for which he needs surgical intervention (Plaintiff is left-handed and is an artist and the injury has drastically damaged his ability to hold a stylus or a pencil and to draw with pen and ink) false imprisonment, fear, physical and emotional pain, torment, grief, degradation, fear, humiliation, anguish, anxiety, embarrassment, and emotional distress, all proximately resulting in some permanent impairment, disability and damage and he claims general damages for such physical and mental pain in an amount to be shown according to proof to punish the defendants and to deter the defendants and others.

47. As a result of the defendants' conduct, which was perpetrated intentionally, recklessly, wantonly, oppressively, and or with reckless disregard for the rights of Plaintiff and others, and which is so despicable that it is despised by ordinary people, Plaintiff suffered all of the damages mentioned herein, including permanent injury to his hand, wrist and arm, humiliation, fear, feelings of degradation and helplessness, sleeplessness, anguish, despair, fright, grief, severe mental and emotional distress, depression, distrust, and embarrassment in violation of his state and federal constitutional rights and his rights under the laws of the State of California and United States of America, and Plaintiff is entitled to punitive damages.

48. The City of Los Angeles and the LAD are liable for all tortious conduct defined by the common law set forth here under the principles of Respondeat Superior.

49. As a proximate result of the aforesaid acts and omissions of defendants, and each of them, Plaintiff has and will in the future incur doctor, medical, psychiatric, pharmaceutical and incidental expenses, in an amount to be proven at time of trial.

## **Municipal Liability Averments**

50. Plaintiff sustained severe physical injury and pain and lasting mental and emotional harm as a result of the wanton and oppressive use of excessive force against him by the individual defendants, in accordance with the expressly adopted official policy — or a widespread or longstanding practice or custom — or both — of the City the LAPD and the LAD, which were so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury to him.

51. The physical, mental and emotional injuries visited upon plaintiff, in retaliation for his exercising his first and fourth amendment constitutional rights, were caused at least in part by the longstanding City and LAD expressly adopted

official policy, or widespread or longstanding practice or custom of having only nominal and perfunctory oversight over their operations, the failure to conduct any investigation into the chronic false arrests and the use of excessive force by LAD and LAPD personnel against persons, and using the internal affairs process to conceal and whitewash incidents of the use of excessive force, conspiracy, and false arrest.

52.     At all relevant times, Defendants City and LAD, including supervisory defendants and policymakers and Does 1-5, and each of them, maintained expressly adopted official policies, or widespread or longstanding practices or customs, or both, that posed a substantial risk of serious harm to persons in plaintiff's situation and each defendant knew that the following policies, customs or practices posed this risk of harm: (1) failure to supervise, investigate, train and take corrective action in response to incidents of Security officers seizing patrons without reasonable suspicion or probable cause and using excessive force against them; (2) inadequate supervision of and training of officers in the use of handcuffs; (3) condoning and ratifying inadequate supervision of officer misconduct, unconstitutional conduct, and or dereliction of duty; (4) condoning and ratifying inadequate supervision by supervisors who fail to report or investigate officers' and other supervisors' wrongful or unconstitutional acts, or dereliction of duty; (5) condoning and ratifying inadequate supervision by supervisors who fail to report or investigate officers who use excessive force on persons; (6) ratifying wrongful conduct by officers that results in serious injuries to persons, civil litigation, judgments and settlements by failing to implement corrective action to prevent repetition of the wrongful conduct; (7) ratifying wrongful conduct by supervisors that results in serious injuries to persons, civil litigation, judgments and settlements by failing to implement corrective action to prevent repetition of the wrongful conduct; (8) failure to supervise, investigate, train and take corrective action in response to incidents of

officers fabricating probable cause in official reports for the purpose of covering up arrests without probable cause of patrons and the use of excessive force against patrons and other persons; and (9) failure to supervise, investigate, train and take corrective action in response to incidents of officers fabricating probable cause in official reports for the purpose of covering up the use of excessive force against arrestees and other persons.

53.     Chief Moore and the supervisorial defendants and policymakers became aware of and should have taken corrective action to prevent repeated incidents of supervisors failing to supervise subordinates who were derelict in their duties and responsibilities but they failed to take corrective action; thus, they were deliberately indifferent to: (1) incidents of officers using excessive force on arrestees and other persons; (2) incidents of officers and supervisors adhering to a "code of silence" resulting in failures to report officers' wrongful and unconstitutional conduct; (3) incidents of supervisors failing to conduct investigations or conducting conclusory or perfunctory investigations of use of force incidents; (4) the ratification of wrongful conduct by officers and supervisors that result in serious injuries to persons, civil litigation, judgments and settlements by failing to implement corrective action to prevent repetition of ongoing wrongful conduct; (5) incidents of inadequate or a complete absence of supervision and training; (6) incidents that supervisors were not reporting to their superiors as necessary or required as part of their duties and responsibilities; (7) officers conducting searches of persons without probable cause and in an unreasonable manner.

54.     Moore disregarded the known or obvious consequence that particular training deficiencies or omissions would cause these subordinates to engage in acts that would deprive the plaintiff of his constitutional rights as they did in this case.

55.     Moore was instrumental in fostering the code of silence and culture of

fear and deprivation of constitutional rights on a systemic and institutional basis by performing the duty of whitewashing internal affairs complaints and complaints of wrongful arrests, the use of excessive force against persons and arrestees, the fabrication of probable cause to cover up the use of excessive force, and similar infractions perpetrated by officers and employees, and did so in this case.

56.     As a result, the City is liable based upon Chief Moore's personal knowledge or constructive knowledge of claims asserting that Security officers employed by LAPD at the Stadium routinely use excessive force against patrons at the Stadium and his approving settlements of those claims, resulting in a custom of officers being deliberately indifferent to the constitutional rights of patrons of LAD, and of officers using excessive force against persons at the Stadium and falsifying reports to fabricate probable cause to cover up the use of excessive force, which has become such a longstanding, well-settled or widespread practice or custom that Moore and the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it.

57.     Yet Moore did nothing to end the practice or custom; Moore's inaction and failure to investigate, re-train, reprimand or request disciplinary action of the involved officers is acquiescence in the unconstitutional conduct and constitutes a custom and practice and is the moving force behind plaintiff's injuries, for which the City and LAD are liable under the authority of *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991) (Chief of Police held individually liable for condoning excessive force); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) ("Policy or custom may be inferred if, after [constitutional violations], … officials took no steps to reprimand or discharge the [prison] guards, or if they otherwise failed to admit the guards' conduct was in error."); *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985) (upholding verdict for police chief's failure to respond to the situation or to make changes in order to prevent recurring violations evidenced preexisting

policy of deliberate indifference to the dangerous recklessness of its police officers); *Bordanaro v. McLeod*, 871 F.2d 1151 (1st Cir. 1989), and *Henry v. County of Shasta*, 132 F.3d 512, 520 (9th Cir. 1997) (Defendant Sheriff's failure to fire or reprimand officers evidences a policy of deliberate indifference to their misconduct even after being sued to correct a blatantly unconstitutional course of treatment – "is even more persuasive evidence of deliberate indifference or of a policy of encouraging such official misconduct."); Moore delegated to subordinates his non-delegable statutory duties and responsibilities as the policy-maker and his non-delegable duty to supervise and hold his subordinates accountable, and failed to take corrective measures to ensure that his subordinates were complying with their duties and responsibilities to prevent ongoing constitutional violations.

58.     Michel Moore was a final policymaker and learned of and specifically made a deliberate choice to approve of the acts of the officer and LAD Security defendants, described in this pleading, learned that the defendants used excessive force against Plaintiff, and knew of the bases for the acts of the defendants, before specifically making a deliberate choice to approve of their acts.

59.     Defendant City, by and through its agents and LAPD and the policymakers, including Moore, who had final policymaker authority and who had authority on behalf of the City to delegate such authority, delegated final policymaking authority to others.

60.     Defendants violated plaintiff's constitutional rights, as alleged in this complaint, by, inter alia, failing to train the Security officers and the uniformed LAPD officers.

61.     Defendants LAD and City and the City and LAPD policymakers had ample reason to know, based upon complaints, arrest reports, and, inter alia, claims for damages, that LAD and LAPD employees regularly engage in the misdeeds set forth throughout this complaint.

62. City, LAD and the policymakers, and each of them, were on actual or constructive notice that the LAD and LAPD training programs were not adequate to (1) prevent violations of law by officers as described in this complaint, (2) train its officers to handle the usual and recurring situations with which they must deal, and the municipal liability defendants were deliberately indifferent to the (1) the substantial risk that its policies were inadequate to prevent violations of law as described in this complaint, and (2) known or obvious consequences of their failure to train LAPD officers adequately, and the failure of the City, Moore and the LAPD to prevent violations of law as described in this complaint and to provide adequate training as stated above played a substantial part in bringing about or actually causing the injury to Plaintiff and to the deprivation of his rights under the fourth and fourteenth amendments, as described in this pleading, yet these defendants chose in the face of this knowledge and risk to retain the deficient policies and training program.

63. Thus, the defendants' policy of inaction to the deficiencies of the LAD and LAPD policies and training programs constituted a decision on the part of the City and LAD to violate the constitution.

64. Specifically, the training programs were deficient in the failure to *inter alia*: (1) instill integrity in officers; (2) train officers about the LAPD discipline process and the consequences of misconduct; (3) train officers to talk to persons and to talk their way out of confrontations and to de-escalate situations; (4) train officers to involve supervisors and managers in decisions that can lead to the use of force against a person; (5) train officers about the consequences of lying in official reports, lying to supervisors and covering up force incidents; (6) train officers in "role playing" and how to deal with situations where their authority is questioned or challenged; (7) train officers that force is a last resort and that officers should use only the minimum amount of force necessary to the circumstances; (8) train officers

to refrain from lying in official reports for the purpose of fabricating probable cause for an arrest; and (9) train officers in the Peace Officers Standards and Training (P.O.S.T.) protocols and learning domains and (10) train officers as set forth above.

65.     The foregoing unconstitutional failures to train were a direct and legal cause and moving force behind the deprivations of Plaintiff's constitutional rights and the harm he suffered.

66.     Defendants' failures to train, as described in this complaint, were within the control of the Defendants and within the feasibility of Defendants to alter, adjust and correct so as to prevent some or all of the unlawful acts and injury complained of in this complaint by plaintiffs.

67.     On and for some time before April 16, 2022 (and continuing to the present time) Defendants City and LAD and their supervising and managerial employees, agents, and representatives, acting with reckless disregard and deliberate indifference for the rights of the public in general, of the plaintiff and others in his class and comparable position, knowingly maintained, enforced and applied policies or longstanding or widespread practices and customs, or both, including (1) employing and retaining as police officers and Security officers and other personnel, including the defendants in this action, who Defendants at all times material knew or reasonably should have known had dangerous propensities for abusing their authority by mistreating persons and for failing to follow written City, LAPD, and LAD policy and for using excessive force; (2) inadequately supervising, training, controlling, assigning and disciplining LAD Security officers and LAPD police officers and other City personnel, including the defendants, who the City and LAD knew or reasonably should have known had the aforementioned propensities; (3) though the City and LAD had knowledge, prior to the incident involving the plaintiff, of repeated allegations and reports of misconduct involving the use of excessive force by LAD Security and LAPD officers, they maintained a policy of

inaction, and failed to investigate the allegations and reports or take any corrective action in response; (4) though Defendants City and LAD had knowledge, prior to the incident involving the plaintiff, of similar instances of misconduct involving the use of excessive force against persons like the plaintiff, they failed and refused to enforce established administrative procedures designed to abate such incidents; (5) Defendants City and LAD reprimanded, threatened, intimidated, demoted, fired officers and employees who courageously reported unlawful acts and acts that violated policy by other officers, including LAPD officers and LAD Security officers, and tolerated a hostile and dangerous work environment for those officers and employees; (6) Defendants City and LAD covered up unlawful acts and acts of misconduct and abuse by LAPD officers and LAD Security officers and sanctioned a code of silence by and among officers and management; (7) Defendants City and LAD condoned and encouraged a systemic conspiracy of silence among their employees for the purpose of concealing wrongful and illegal conduct and misconduct by their employees, and these policies, practices or customs or any combination of them were so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

68.     The actions and inactions of the City and the policymakers set forth in the preceding paragraphs were known or should have been known to the policymakers responsible for the LAPD and occurred with deliberate indifference to either the recurring constitutional violations described here, and or to the strong likelihood that constitutional rights would be violated as a result of failing to train, supervise or discipline in areas where the need for such training was obvious.

69.     Chief Moore and the other policymakers, who had final policymaker authority from defendants City and LAD, ratified the conduct of the officer defendants in this case and the bases for their conduct in that they knew of and specifically approved of the conduct of the officer defendants.

## <u>Cause of Action # 1</u>

<u>Deprivation of Constitutional Rights – Amendments IV & XIV - 42 U.S.C. § 1983 – Unreasonable Seizure of Person, Excessive Force and *Monell* — Against all Defendants</u>

70.     Plaintiff realleges and incorporates here each and every allegation set forth in this pleading as if set forth here in full and, specifically, as to *Monell*, ¶¶ 4-8, 13 and 50-69.

71.     At the time of the Incident set forth in the averments set forth above, the rights of persons within the jurisdiction of the United States of America under both Amendment V and XIV to the United States Constitution to due process of law and the equal protection of the laws and under Amendment IV to be free from unreasonable searches and seizures, were in force and effect.

72.     The LAD Security defendants and the LAPD defendants, who were all present, met and conferred, and formed a meeting of the minds, a partnership and an understanding, and agreed to that the LAD Security defendants would use excessive force against and falsely arrest LAD patrons, including plaintiff, and that the LAPD defendants would fail to intervene to stop the use of excessive force or the unlawful seizures.

73.     The defendants perpetrated at least one overt act of the conspiracy by handcuffing and falsely arresting Plaintiff and ejecting him from Dodger Stadium before the game that he paid to watch was concluded.

74.     The defendants carried out the objects of the conspiracy when they detained Plaintiff without reasonable suspicion, used excessive force against Plaintiff and arrested Plaintiff without a warrant or probable cause pursuant to the agreement or understanding, and the defendants knew that their conduct would deprive Plaintiff of his constitutional rights, but the LAPD Defendants failed to act to prevent the use of excessive force against Plaintiff or the arrest of Plaintiff, in

violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and proximately caused the severe and permanent injuries to plaintiff.

75.     The LAPD Defendants had a realistic opportunity to intercede to stop the use of excessive force against Plaintiff and the arrest of Plaintiff, which was unsupported by probable cause, but they failed to do so.

76.     The LAD Security Defendants were acting under color of state law as they were at all times acting pursuant to a conspiracy and in joint action with the LAPD Defendants.

77.     At all material times LAD was a state actor because it had a system of cooperation and interdependence with the LAPD and the City and its Security personnel were LAPD officers who acted closely, jointly and in concert with uniformed LAPD officers who were present in the immediate confines of the Stadium where they used excessive force against the plaintiff and others, with uniformed LAPD officers standing by and failing and refusing to intervene to prevent the violation of plaintiff's constitutional rights and preventing others from interceding to come to plaintiff's aid; LAD was a wilful participant in joint action with the City and the LAPD and had contracted with the City and the LAPD for the utilization of LAPD officers in its Security operation.

78.     At all material times LAD was a state actor because, as described above, there was a sufficiently close nexus between the City and the LAPD on the one hand and LAD on the other, as the City and the LAPD insinuated themselves into a position of interdependence with LAD in the context of LAD's Security operation.

79.     At all relevant times, Defendants City of Los Angeles and LAD maintained expressly adopted official policies, or widespread or longstanding practices or customs that posed a substantial risk of serious harm to persons in plaintiff's situation and the Defendant knew that the following expressly adopted

official policy or custom or practice posed this risk of harm: (1) failure to supervise, investigate, train and take corrective actions in response to incidents of LAPD officers failing to intervene in the use of excessive force against patrons of Dodger Stadium; (2) failure to supervise, investigate, train and take corrective actions in response to incidents of incidents of LAPD officers failing to intervene in the arrests without probable cause by LAD Security of patrons of Dodger Stadium; (3) inadequate supervision of and training of officers in the use of handcuffs; (4) the failure to investigate officer misconduct; (5) condoning inadequate supervision by supervisors who fail to report or investigate officer misconduct; (6) ratifying wrongful conduct by officers that results in serious injuries to persons, civil litigation, judgments and settlements by failing to implement corrective action to prevent repetition of the wrongful conduct; (7) ratifying wrongful conduct by supervisors that results in serious injuries to persons, civil litigation, judgments and settlements by failing to implement corrective action to prevent repetition of the wrongful conduct; and (10) failure to supervise, investigate, train and take corrective action in response to incidents of officers fabricating probable cause in official reports for the purpose of covering up arrests without probable cause of persons.

80. The LAPD defendants acted pursuant to official policies or the widespread or longstanding practices or customs of the City of Los Angeles and the LAD Security defendants acted pursuant to official policies or the widespread or longstanding practices or customs of LAD and of the City.

81. The official policies or the widespread or longstanding practices or customs, or both, of LAD and the City were so closely related to the deprivation of the plaintiff's rights as to be the moving force behind the deprivations of the constitutional rights of the plaintiff and the ultimate injuries suffered by him.

## **Cause of Action # 2**

### Assault — Against all Defendants

82.    Plaintiff realleges and incorporates here each and every allegation set forth in this pleading as if fully set forth here at length.

83.    LAD Security Defendants accosted Plaintiff and spoke to him in a violent and threatening manner, intending to cause harmful or offensive contact with him.

84.    The defendants acted, intending to cause harmful or offensive contact with Plaintiff.

85.    The defendants threatened to touch Plaintiff in a harmful or offensive manner.

86.    Plaintiff reasonably believed that the defendants were about to carry out the threat and use unjustified and excessive physical force against him and he protested.

87.    Plaintiff did not consent to the Defendants' conduct.

88.    Plaintiff was harmed by the Defendants' conduct.

**Cause of Action # 3**

Battery — Against all Defendants

89.    Plaintiff realleges and incorporates here each and every allegation set forth in this pleading as if fully set forth here at length.

90.    Defendants touched or caused Plaintiff to be touched with the intent to harm or offend Plaintiff.

91.    Plaintiff did not consent to the touching.

92.    Plaintiff was harmed by the Defendants' conduct.

93.    A reasonable person in Plaintiff's situation would have been offended by the touching.

94.    Defendants threatened to touch Plaintiff.

95.    It reasonably appeared to Plaintiff that the defendants were about to carry out the threat.

96.   Plaintiff did not consent to the Defendants' conduct.

97.   Plaintiff was harmed by the Defendants' conduct.

**Cause of Action # 4**

False Imprisonment — Against all Defendants

98.   Plaintiff realleges and incorporates here each and every allegation set forth in this pleading as if fully set forth here at length.

99.   On or about April 16, 2022, the defendants used threats and force against Plaintiff, intending to cause harmful or offensive contact with him, while speaking to him in a threatening and intimidating manner.

100.   False imprisonment is the unlawful violation of the personal liberty of another. Penal Code § 236.

101.   In order to constitute a case of false imprisonment, it is essential that there be some restraint of the person; but it is not necessary that there be confinement in a jail or prison. Any exercise of force, or express or implied threat of force, by which in fact the other person is deprived of his liberty or is compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment. *People v. Agnew*, 16 Cal.2d 655, 660 (1940).

102.   False imprisonment involves an unlawful restraint or confinement which may be effected . . . by force or threat of force, [or] by fraud or deceit, or any other form of unreasonable duress. *Scofield v. Critical Air Medicine, Inc.*, 45 Cal.App.4th 990, 996 (1996).

103.   The crime of false imprisonment and the tort are identically defined. *Scofield,* 45 Cal.App.4th at 1001.

104.   In accosting Plaintiff, threatening him, and using unjustified physical force against Plaintiff, the defendants intentionally violated Plaintiff's personal liberty and deprived Plaintiff of his freedom of movement by violence, menace, the implied threat of force and by the use of threats of force, and unreasonable duress.

105.   Plaintiff did not consent to the conduct.

106.   Plaintiff was actually harmed.

107.   The conduct of the defendants was a substantial factor in causing harm to Plaintiff.

## **Cause of Action # 5**

### Negligence — Against all Defendants

108.   Plaintiff realleges and incorporates here each and every allegation set forth in this pleading as if set forth here in full.

109.   The defendants had and have a duty to use reasonable care in the circumstances described in this notice and in the treatment of persons including plaintiff and it was reasonably foreseeable that the acts perpetrated by defendants, as described herein, would result in harm to plaintiff, and in perpetrating the acts and conduct described herein defendants failed to use ordinary or reasonable care in the circumstances and breached that duty referred to above, resulting in the harm and physical injury to plaintiff's hand, wrist and arm and in the infliction of emotional and mental distress and pain on plaintiff as described herein.

## **Cause of Action # 6**

### Premises Liability — Against All Defendants Except the LAPD Defendants

110.   Plaintiff realleges and incorporates here each and every allegation set forth in this pleading as if set forth here in full.

111.   At all times mentioned Defendant LAD and the other defendants, as owners and or occupiers of land owe a general duty to exercise ordinary care for the safety of persons who visit Dodger Stadium.

112.   At all times mentioned here the persons acting as Security employees at Dodger Stadium were acting with the knowledge, permission, and consent of Defendant LAD and Does.

113.   At all times herein mentioned, the persons acting as managers and

Security employees were the agents, servants, and/or employees of and acting within the course and scope of said agency and employed by Defendant LAD and Does.

114.    At no time mentioned in this action did Plaintiff do any wrongful act of violence toward any person in Dodger Stadium on April 16, 2022.

115.    At said time and place, Defendant LAD and Does, without cause, did viciously attack Plaintiff while acting in the course and scope of their agency and employment with Defendants LAD and Does.

<u>**Cause of Action # 7**</u>

<u>Bane Act, Civil Code § 52.1, including Conspiracy — Against all Defendants</u>

116.    Plaintiff realleges and incorporates here each and every allegation set forth in this pleading as if fully set forth here at length.

117.    At the time of the incident set forth in the averments above, the rights of persons within the jurisdiction of the State of California and the United States of America under both Amendment V and XIV to the United States Constitution to due process of law and the equal protection of the laws, and under the fourteenth amendment and under the California Constitution to due process of law and under the first amendment and under the California Constitution to freedom of speech and under the Eighth Amendment to freedom from cruel and unusual punishment were in force and effect and the individual defendants who engaged in conduct, as set forth here, who subjected Plaintiff to the harm described above by means of threats, intimidation and coercion violated Civil Code § 52.1, *see Cornell v. City & County of San Francisco,* 17 Cal.App.5th 766 (2017); *Reese v. County of Sacramento,* 888 F.3d 1030 (9th Cir. 2018).

118.    By the use of force and violence, threats, intimidation or coercion the defendants caused Plaintiff to reasonably believe that if he exercised his constitutional right to liberty, his right to pursue and obtain safety, his right to

pursue and obtain happiness, Cal. Const., Art. I, § 1, his privacy right to seclusion, his right to speech, his right to be secure in his person or any other right secured by the Constitution or laws of the United States of America or the Constitution or laws of the State of California the defendants would commit violence against him and the defendants had the apparent ability to carry out the threats.

119.   The defendants acted violently and intentionally against Plaintiff with the intent to prevent him from exercising his constitutional right to liberty, his right to pursue and obtain safety, his right to pursue and obtain happiness, his privacy right of seclusion, his right to speech, his right to be secure in his person and or any other right secured by the Constitution or laws of the United States of America or the Constitution or laws of the State of California to retaliate against Plaintiff for having exercised his rights.

120.   Civil Code § 43 provides that "every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations."

121.   By the use of force, threats, intimidation or coercion defendants caused Plaintiff to reasonably believe that if he exercised his right of protection from bodily restraint or his right to protection from bodily harm secured by the laws of the State of California defendants would commit violence against him and defendants had the apparent ability to carry out the threats and intimidation.

122.   The defendants acted violently and intentionally against Plaintiff with the intent to prevent him from exercising his right to protection from bodily restraint and or his right to protection from bodily harm, to retaliate against Plaintiff for having exercised his right to protection from bodily restraint and or his right to protection from bodily harm.

123.   The defendants acted violently against Plaintiff to prevent him from exercising his constitutional right to privacy, to speech, to liberty, to travel, to be free from violence and to be secure in his person and from unreasonable searches and seizures or any other right secured by the Constitution or laws of the United States of America or the Constitution or laws of the State of California to retaliate against Plaintiff for having exercised his right to travel, to be where he had a right to be, and to be free from violence and from unreasonable searches and seizures.

124.   The defendants intended to deprive Plaintiff of his enjoyment of the interests protected by the right to privacy, to liberty, to travel, to be where he had a right to be, and to be secure in his person and free from violence and from unreasonable searches and seizures.

125.   The right to protection from bodily restraint or harm includes an individual's right to be free from physical attack or the threat of physical attack.

126.   Defendants physically attacked Plaintiff, violating his right to protection from bodily restraint and his right to protection from bodily harm.

127.   Defendants physically attacked Plaintiff, violating his right to protection from bodily restraint and his right to protection from bodily harm.

128.   The LAD Security defendants and the LAPD defendants, who were all present, met and conferred, and formed a meeting of the minds, a partnership and an understanding, and agreed to that the LAD Security defendants would use excessive force against and falsely arrest Dodgers patrons, including plaintiff, using threats, intimidation and coercion to violate Plaintiff's constitutional and statutory rights and that the LAPD defendants would fail to intervene to stop the use of excessive force or the unlawful seizures.

129.   The defendants perpetrated at least one overt act of the conspiracy by handcuffing and falsely arresting Plaintiff and ejecting him from Dodger Stadium before the game that he paid to watch was concluded.

130.   The defendants perpetrated these acts because of Plaintiff's race — Plaintiff is Hispanic.

131.   Plaintiff was harmed by the acts of the defendants as described herein.

132.   The conduct of the defendants was a substantial factor in causing harm to Plaintiff.

## **Cause of Action # 8**

Negligent Hiring, Retention, and Supervision — Against LAD and City

125.   Plaintiff realleges and incorporates here each and every allegation set forth in this pleading as if set forth here in full.

126.   Defendants LAD and Does had a duty to Plaintiff to hire a head of security employees, security employees, officers and other security employees who were properly trained, properly instructed on lawful conduct, restrained in their use of force, and otherwise competent to prevent any injury to spectators and guests at Dodger Stadium.

127.   Defendants LAD and Does failed or refused to properly hire, screen, train, and supervise those members of their Security employees team, including the individual defendants, to carry out their duties in a manner that was  properly trained, and specifically with instruction on lawful conduct, the use of restraint in the use of force against persons, and, inter alia, the preservation and observation of the constitutional and civil rights of persons.

128.   Defendants City and LAD and Does trained and instructed Security employees to eject patrons and to effect arrests on those patrons at Dodger Stadium even when there was no basis or cause for the ejection or arrest.

129.   As a direct and proximate result of Defendants LAD's and City's failure to properly hire, screen, train and or supervise those members of their Security team, Plaintiff was injured.

Prayer

Plaintiff seeks judgment as follows:

1.     General, special and compensatory damages against each defendant, jointly and severally, in accordance with proof;

2.     An award of punitive damages against each individual defendant to be determined according to proof and in an amount sufficient to make an example of those defendants and to deter future misconduct;

3.     Costs, and reasonable attorney's fees and expenses of litigation pursuant to 42 U.S.C. § 1988;

4.     All damages, penalties, costs, interest, and attorney's fees as allowed by statute;

6.     Prejudgment and post-judgment interest as permitted by law; and

7.     Injunctive, declaratory and such further relief as the Court deems just and proper.

DATED: November  6 , 2023                JDP PC, Jeff Dominic Price

                                         By

                                         Jeff Dominic Price, Esq.
                                         Attorney for the Plaintiff

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a jury trial as to all claims for relief.

DATED: November  5 , 2023                Jeff Dominic Price | **JDP PC**

                                         By      /s/ Jeff Dominic Price
                                         Jeff Dominic Price, Esq.
                                         Attorney for the Plaintiff